**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Quintiliani, et al., | No. CV-10-1363-PHX-SMM |
| Plaintiffs, | |
| vs. | **ORDER** |
| Concentric Healthcare Solutions, LLC., et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion for partial summary judgment. (Doc. 41.) Under the Fair Labor Standards Act ("FLSA"), Plaintiffs argue that they were entitled to overtime compensation in their positions with Defendants because they were not exempt under either the executive or administrative exemption. (Id.) As a matter of law, Plaintiffs request that the Court grant partial summary judgment finding their positions not exempt, and determining at trial the extent of their monetary damages.

In their response, Defendants have not argued that Plaintiffs' positions were subject to an executive exemption (Doc. 49), so that contention is waived. See F.D.I.C. v. Garner, 126 F.3d 1138, 1145 (9th Cir. 1997) (stating that a litigant who presents no case law or argument in support of a claim is deemed to have waived that argument). Defendants do argue that Plaintiffs performed exempt administrative duties. (Id.) Plaintiffs have replied. (Doc. 52.) After reviewing the briefs, and having determined that oral argument is unnecessary, the Court will grant in part and deny in part Plaintiffs' motion for partial summary judgment. (Doc. 41.)

**BACKGROUND**

Defendant Concentric Healthcare Solutions, LLC ("Concentric") is a healthcare staffing and placement firm specializing in providing temporary or fill-in nursing staff and other healthcare professionals to client hospitals and clinics that have contracted for the service with Concentric. (Doc. 42-2 at 3; Doc. 50 at 1.) Defendant Alarys Home Health, Inc. ("Alarys") is a Home Health Agency that specializes in providing nurses, nurse assistants, home health aides and therapists to the elderly and disabled in the client's residence following a referral from a doctor or insurance company. (Id.)

Concentric maintains a database of qualified nursing staff and other healthcare professionals that may be referred to client hospitals and clinics that have contracted with Concentric. (Doc. 42 at 2-5.) In order to be eligible for referral to certain staffing positions, nursing and other healthcare professionals must obtain and maintain certain certifications. (Id.) Correspondingly, Concentric also certifies to regulatory agencies such as the Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO")[1] and the Arizona Hospital and Healthcare Association ("AzHHA")[2] that it is in compliance with their standards and requirements. (Doc. 51-2 at 7-9.)

When a hospital/clinic client identifies that it has a need for a specific type of healthcare professional for a specific shift, the client will coordinate its staffing request through Concentric's Staffing Coordinator. (Doc. 42-2 at 4, 13.) On occasion, the client

---

[1] JCAHO is an independent, not-for-profit organization that accredits and certifies health care organizations throughout the United States. JCAHO certification acknowledges compliance with the Joint Commission's national set of consensus-based quality standards and demonstrates a commitment to excellence in providing health care staffing. (Doc. 42-2 at 21.)

[2] AzHHA is an Arizona based agency that coordinates the placement of temporary healthcare personnel. AzHHA maintains a registry program of qualified agencies and qualified participating institutions from which temporary placements can be coordinated. (Doc. 42-2 at 30-50.)

1  will request a specific individual who had previously staffed with the client. (Id. at 13.)  The
2  Staffing Coordinator answers and places over a hundred calls each shift related to staffing
3  requests and facilitating placement.  (Id. at 14.)  After a staffing request is made, the Staffing
4  Coordinator then searches a detailed company database for individuals qualified and
5  available to fill the needed position and shift.  (Id. at 13.)  Staffing Coordinators may also
6  periodically contact client hospitals/clinics to see if they know of any future staffing needs
7  (Id. at 14.)

At Concentric, the Compliance Coordinator monitors that the nurses, home health aides and medical staff included in the company database possess and are current with all required licenses, certificates and background checks based on a detailed checklist outlining the specific requirements for each position.  (Id. at 12.)

Plaintiff Jennifer Quintiliani ("Quintiliani") was employed by Concentric as a Staffing Coordinator but also performed the same job responsibilities occasionally for Alarys.  (Doc. 42-2 at 3; Doc. 50 at 3.)  Her salary was $35,000 per year plus commissions.  (Doc. 50 at 7.)  In 2008, Quintiliani's total compensation including salary plus commissions was $58,771.26.  (Doc. 42-2 at 6.)  For most of her employment, Quintiliani was supervised by Andrew Jacobs, the Director of Medical Staffing.  (Doc. 42-2 at 3.)

Plaintiff Jessica Carpenter ("Carpenter") was employed by Concentric as a Compliance Coordinator and as a Staffing Coordinator.  (Doc. 42-2 at 3; Doc. 50 at 6.)  Her salary as a Compliance Coordinator was $34,000 per year plus commissions.  (Doc. 51-5 at 17.)  Carpenter was also supervised by Andrew Jacobs, the Director of Medical Staffing.  (Doc. 42-2 at 11.)

The job description for Staffing Coordinator is as follows:

a) answer in-bound phone calls, minimum of 80 outbound calls per day; b) communicate daily with all active nursing employees, to update schedules and answer questions; c) communicate daily with Client facilities to answer questions and confirm shifts; d) generate leads for new client businesses; assess client needs and liaise with recruiters to fulfill; ensure timely payroll and billing; e) maintain accessibility to weekend and night staff for questions; f) provide on call coverage three to four times per month, or as needed - to

- 3 -

include weekends, nights and holidays; g) knowledge and application of AzHHA and JCAHO standards; h) adhere to all Federal and State laws regarding licensure requirements as well as relevant healthcare program requirements to include the Company's business policies and Code of Conduct; i) and other duties as assigned.

(Doc. 50 at 7-8.) Specifically, the Staffing Coordinator's primary duties involved:

a) placing nurses who would provide the best services to Concentric's clients; b) approving higher rates of pay for nurses where appropriate in order to ensure the placement of the most capable nurses with Concentric's clients; c) working directly with Concentric's clients to gather evaluative information regarding the staffing services to ensure the "best fit" for staffing; d) generating additional business and developing the client relationship on behalf of Concentric; e) counseling nurses who did not provide good service to Concentric's clients; f) participate in terminating or designating a nurse as DNR [Do Not Return] where appropriate service is not provided to Concentric's clients; g) forecasting client needs in order to market, sell and development Concentric's clients.

(Doc. 51-6 at 3-4; Doc. 51-2 at 19-23.)

The job description for Compliance Coordinator is as follows:

a) assists with the development oversight and monitoring of compliance programs within the Company; b) administrates the Company's General Compliance Program; c) communicates and coordinates with other branches of the Company to develop an awareness of the compliance program among Company employees; d) adhere to all Federal and State laws regarding licensure requirements as well as relevant healthcare program requirements to include the Company's business policies and Code of Conduct; e) audit newly hired external employees files to ensure proper credentials and licensure requirements and 100% compliant before placement in client facilities; f) audit existing external employee files to ensure ongoing compliance as dictated by client contracts, JCAHO, AzHHA, and other stricture as needed; g) communication with external personnel regarding expiring/expired, credentials, licenses or missing documentation; provide weekly compliance reports as necessary to the Director of Medical Staffing; other duties as required.

(Doc. 51-1.)

A Compliance Coordinator monitors that the nurses, home health aides and medical staff included in the company database possess and are current with all required licenses, certificates and background checks based on a detailed checklist outlining the specific requirements for each position. (Doc. 41 at 3.)

At this juncture, the Court will postpone further factual discussion until those facts become relevant to the issues of law that must be addressed in Plaintiffs' motion for partial

1  summary judgment.

## STANDARD OF REVIEW

### Summary Judgment

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 317. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

FLSA

Whether the job activities of an employee precludes them from overtime benefits under the FLSA is a question of law for the Court. Bothell v. Phase Metrics, 299 F.3d 1120, 1124 (9th Cir. 2002). The actual day-to-day job activities of the Plaintiffs are questions of fact for the Court. Id. They will be reviewed in the light most favorable to Concentric, the non-moving party, to determine whether there are genuine issues of material fact that would preclude granting Plaintiffs summary judgment. Id.

**DISCUSSION**

Pursuant to the FLSA, employees must be paid time and a half for work over forty hours per week. 29 U.S.C. § 207(a)(1). Certain employees are exempt from this requirement, however, including those persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Policy dictates that FLSA exemptions be narrowly construed against the employer, and their application is limited to those establishments plainly and unmistakably within the exemption's terms and spirit. See Auer v. Robbins, 519 U.S. 452, 462 (1997). The employer bears the burden of proving that an employee's job is subject to an exemption. See Klem v. Cnty. of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000).

Administrative Exemption

Defendants contend that Quintiliani and Carpenter worked for Concentric in the position of Staffing Coordinator as exempt administrative employees. (Doc. 49.) Defendants further contend that Carpenter's position as Compliance Coordinator was an exempt administrative position. (Id.)

1. Staffing Coordinator

The Court will evaluate whether the job responsibilities of Staffing Coordinator qualifies as an exempt administrative position. A bona fide administrative employee is any

- 6 -

employee:

> 1) Compensated on a salary or fee basis at a rate of not less than $455 per week;
> 2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> 3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

To qualify under the administrative exemption, an employee must meet both the salary test and the duties test. It is undisputed that the both Quintiliani and Carpenter meet the salary test. (Doc. 41 at 5, 10.) It remains for the Court to consider the duties test, which pursuant to regulation, requires work directly related to management polices or general business operations and the exercise of discretion and independent judgment with respect to matters of significance. See 29 C.F.R. § 541.200; In re Farmers Insurance Exchange, Claims Representatives' Overtime Pay Litigation, 481 F.3d 1119, 1127 (9th Cir. 2007).

The facts establish that Plaintiffs were involved in performing non-manual office work. That being said, it remains for Concentric to prove first that the Staffing Coordinator's job activities were directly related to management or general business operations. Regarding that analysis, the regulations provide additional guidance, as follows:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a).

Concentric then has the additional burden of showing that the employee exercises discretion and independent judgment with respect to matters of significance. The regulations provide additional guidance on that job activity as well:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence

- 7 -

of the work performed.

29 C.F.R. § 541.202(a). The regulations then give examples of the requisite discretion and independent judgment necessary:

> The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). Regulations by the Department of Labor further provide that to exercise discretion and independent judgment, an "administrative" employee must meet at least two or three of these factors. See Dep't of Labor Wage & Hour Div., Rules and Regulations, 69 Fed. Reg. 22122, 22143 (Apr. 23, 2004).

Courts that have considered positions similar to the Staffing Coordinator at issue here have found that the duties of the position was administratively exempt. See, e.g., Goff v. Bayada Nurses, Inc., 424 F. Supp.2d 816, 824 (E.D. Pa. 2006) (holding that a supervisor for a nursing agency who placed nurses with patients and managed the nurses' relationship with customers fit within the administrative exemption); Hudkins v. Maxim Healthcare Servs., 39 F. Supp.2d 1349, 1349-50 (M.D. Fla. 1998) (holding that a recruiter of nurses for defendant's client hospitals fit within the administrative exemption).

The Court will more specifically review the two main aspects of the duties test in order to determine whether the Staffing Coordinator position at issue is administratively

1 exempt.

### a. Directly Related

Defendants argue that the Staffing Coordinator's duties and responsibilities are directly related to their business operations because it is the Staffing Coordinator's responsibility to oversee the placement of medical staff with their clients. (Doc. 49 at 9-10.) Defendants further support their direct relation argument contending that it is the Staffing Coordinator who is responsible for knowing the staff available for the need and matching the client's need with the skill set of the professionals available. (Id.)

Plaintiffs contend that a Staffing Coordinator is not administratively exempt because it is a customer service or production position with respect to Concentric's marketplace offering, the product that Defendants offer to client medical facilities–temporary medical staff. Plaintiffs allege that their duties were unrelated to the actual management or the general business operation of the company.

Although not specifically controlling, in a 2005 opinion letter, the Department of Labor Wage and Hour Division concluded that a staffing manager at a temporary staffing agency "performed work in the functional areas of personnel management, human resources and labor relations" by "recruiting, hiring and managing the temporary labor pool of [the agency's] clients" and, *therefore, met the requirement of performing "work directly related to the management or general business operations of the employer's clients*." Dep't of Labor Wage & Hour Div. Op. Ltr. at 3, 2005 WL 3308616 (Oct. 25, 2005) (emphasis added).

At issue is whether the conclusion drawn by the Department of Labor with respect to the Staffing Manager position is also the conclusion that must be drawn with respect to the duties performed by a Staffing Coordinator. The Court finds that because the same principles apply with respect to the duties of Staffing Coordinator, the same conclusion should be reached. The Staffing Coordinator provides an administrative human resource service to Concentric's clients by fielding and making calls to Concentric's clients regarding staffing needs and then matching particular nurses/medical professionals that best fit the

- 9 -

1  need. The Staffing Coordinator also responds to discipline problems associated with staff
2  and has the authority to designate staff as DNR ("Do Not Return"). The Staffing
3  Coordinator does not "produce" anything. It is the services of the temporary medical
4  professionals that is the "product" of Concentric's business.

5  The other courts considering this issue agree. In Goff, the court held that a supervisor
6  who matched nurses to patients and was involved in case managing to ensure that the
7  temporary employee retains a positive relationship with the client was performing a function
8  directly related to the business. See 424 F. Supp.2d at 824. In Hudkins, 39 F. Supp.2d at
9  1350, even though the position at issue was "recruiter," the court considered the similar
10 primary duties of the Staffing Coordinator that is at issue here and held that these duties were
11 "directly related to the Defendant's general business operation in that it was a recruiter's
12 responsibility to oversee the placement of nurses with the Defendant's clients." Id.

13 Plaintiffs contend that Hudkins is distinguishable because the employee in that case
14 had the additional responsibility of recruiting nurses whereas in this case the Staffing
15 Coordinator only consults a database of existing nurses available for staffing. (Doc. 52 at
16 9.) Although granted that there was an additional responsibility in Hudkins, it is a distinction
17 without a difference. In each case, the employee is providing an administrative human
18 resource service to the clients; the employee is not producing anything. It is the services of
19 the temporary professionals that is the "product" of Concentric's business. The Court finds
20 that Quintiliani's and Carpenter's primary duty as a Staffing Coordinator was directly related
21 to the business operation of Concentric's clients, and meets the second element of the
22 administrative exemption test.

23                                b. Discretion and Independent Judgment

24 Next, Defendants argue that the Staffing Coordinator exercises the requisite discretion
25 and independent judgment on matters of significance to satisfy this aspect of the duties test.
26 (Doc. 49 at 9-10.) Defendants contend that the Staffing Coordinator's primary duties
27 involves discretion and judgment in order to "staff" appropriate professionals with client
28

- 10 -

1 facilities and place nurses who would provide the best services to Concentric's clients. (Id.)
2 Specifically, it is the responsibility of the Staffing Coordinator to work directly with
3 Concentric's clients to gather information regarding staffing services to ensure the "best fit"
4 for the client. (Id.) Defendants further state that the Staffing Coordinator has authority to
5 approve higher rates of pay where appropriate to ensure the placement of the most capable
6 nurses with Concentric's clients. (Id.) Where necessary, they counsel nurses who did not
7 provide good service to the clients. (Jacobs' Deposition, Doc. 51-2 at 19.) The Staffing
8 Coordinator has the authority to designate a nurse as DNR where appropriate. (Id.; Jacobs'
9 Deposition, Doc. 51-2 at 19.)

Plaintiffs disagree. Plaintiffs' main argument is that the position of Staffing Coordinator merely involves the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. (Doc. 52 at 6-7, citing 29 C.F.R. § 541.202(e).) Plaintiffs contend that in carrying out their job responsibilities, they merely followed the standards and procedures already established. (Id. at 6-7.) Plaintiffs do not dispute that the Staffing Coordinator has the authority to approve higher rates of pay for certain nurses. (Id. at 7.)

The DOL regulations for exercising judgment and discretion, 29 C.F.R. § 541.202(b), establish the factors under consideration and further indicate that in order to exercise discretion and independent judgment, an "administrative" employee must meet at least two or three of these factors. See Dep't of Labor Wage & Hour Div., Rules and Regulations, 69 Fed. Reg. at 22143. In evaluation of these factors, the Court finds that the duties of the position of Staffing Coordinator did meet the requisite standards for judgment and discretion. Specifically, the Staffing Coordinator primary duties implemented important management policies and operating practices regarding the management of the medical professional's relationship with the clients. The same can be said regarding the Staffing Coordinator carrying out major assignments in conducting the operations of Concentric's business. The primary duty of the Staffing Coordinator was management of the medical professional's

- 11 -

relationship with their clients and this included counseling and discipline of staff who did not comply with the client's policies or procedures. Next, even though the Staffing Coordinator's assignments are related to the operation of a particular segment of the business (overall managing staff relationships with the clients), this responsibility affects business operations to a substantial degree. Plaintiff's primary duty as a Staffing Coordinator was to promote, service and administer the general business operation of placement of medical professionals in a manner that would ensure that the medical professionals placed with the clients were capable of producing good medical services and in furtherance of this objective, the Plaintiffs exercised discretion and independent judgment. See Hudkins, 39 F. Supp.2d at 1350.

The Court finds that Quintiliani and Carpenter exercised discretion and independent judgment on matters of significance in their primary duties as a Staffing Coordinator, and thus met the third element of the administrative exemption test.

Last, Plaintiffs argue that since $200 was deducted from one of Quintiliani's commission checks, this renders her "non-exempt." (Doc. 41 at 16.) The Court disagrees. The Department of Labor has issued regulations stating that only an "employer who makes improper deductions from salary may lose the exemption." See 29 C.F.R. § §541.603(a); see also Childers v. City of Eugene, 120 F.3d 944 (9th Cir. 1997) (holding that employees were not rendered non-exempt by a one-time imposition of a disciplinary sanction).

### 2. Compliance Coordinator

The Court finally considers whether the job responsibilities of a Compliance Coordinator qualifies as an exempt administrative position. The Court has already set forth that to qualify under the administrative exemption, an employee must meet both the salary and duties test. It is undisputed that Carpenter met the salary test. Under the duties test, the job responsibilities must be directly related to the management or general business operations and the employee must exercise discretion and independent judgment on matters of significance. See 29 C.F.R. § 541.200.

In support of the administrative exemption, Defendants contend that Carpenter was responsible for obtaining all information for medical staffing recruits and auditing all of the staff employee files to ensure they had the required training and credentials. (Doc. 51-6 at 5.) Defendants further state that Carpenter was also responsible for ensuring that Concentric and all of its employees were compliant with all client, agency and organization agreements and contracts, including its accreditation with JCAHO. (Id.) Carpenter also oversaw and maintained the qualification and database for all external employees and professionals, in addition to performing audits of the employee files for new hires and existing employees. (Id.)

In contrast, Carpenter compares her Compliance Coordinator duties to the duties performed by personnel clerks and inspectors. (Id.) Citing and quoting 29 C.F.R. § 541.203(e), Carpenter argues that "personnel clerks who 'screen' applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemption." Regarding inspectors, Carpenter cites and quotes 29 C.F.R. § 541.203(g) to argue that "[o]rdinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources."

Defendants respond contending that Carpenter's duties were directly related to Concentric's business operations because if she did not perform her duties then Concentric could not conduct its business of staffing medical professionals with its clients. (Doc. 49 at 6.)

The Department of Labor's interpretive regulations, such as 29 C.F.R. § 541.203(e) and (g), are attempts to clarify the meaning of the administrative exemption. Bothell, 299 F.3d at 1126. In these regulations, the DOL is attempting to clarify the application of the discretion and independent judgment test for the administrative exemption. Deference is owed to DOL's regulations interpreting the FLSA. Webster v. Public Sch. Employees of

- 13 -

1  Wash., Inc., 247 F.3d 910, 912-13 (9th Cir. 2001). The Court agrees with Carpenter that the
2  interpretive regulations at issue clarify that her Compliance Coordinator duties did not satisfy
3  the discretion and independent judgment test for the administrative exemption. The
4  responsibilities of the Compliance Coordinator were akin to a personnel clerk who screens
5  applicants to obtain data regarding their minimum qualifications and fitness for employment.

Thus, for the Compliance Coordinator position, Defendants have not established as a matter of law that the duties of this position are entitled to an administrative exemption.

## CONCLUSION

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED GRANTING, IN PART, AND DENYING, IN PART,** Plaintiffs' motion for partial summary judgment. (Doc. 41.) The Court finds that Defendants have established that the position of Staffing Coordinator is administratively exempt. Therefore, Plaintiffs are not entitled to overtime compensation for the time they spent in excess of 40 hours per week performing this position for Defendants. The Court further finds that Defendants have not established that the position of Compliance Coordinator is administratively exempt. Therefore Plaintiff Jessica Carpenter is entitled to overtime compensation for her time spent in excess of 40 hours per week performing this position for Defendant Concentric.

**IT IS FURTHER ORDERED** that a Status Conference shall be held in Courtroom 605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003, on **Monday, April 22, 2013 at 2:00 p.m.**

DATED this 27th day of March, 2013.

_Stephen M. McNamee_
Stephen M. McNamee
Senior United States District Judge